## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HOLLY DOBROSKY** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 18-1727** |
| | : |
| **JENNIFER LOMETTI**, *et al* | : |


**KEARNEY, J.** August 10, 2018

## MEMORANDUM

A mother trained as a lawyer but frustrated with state officials' investigation into claims her child's father verbally and sexually abused her child left Pennsylvania with the child in violation of a state court custody order. Upon return to Pennsylvania, she lost her arguments at the trial for taking the child out of state, lost shared custody of her child and spent time in jail. She has not seen her child in over two years. She alleges the state officials' incomplete 2015 investigation affected a state court judge's decision in November 2015 to allow the father's continued contact with their child. She now asks us to direct state court officials to again investigate the father's alleged abuse and appoint a guardian *ad litem* for her child. These difficult issues are before the state court, which ruled on the abuse claims in late 2015. She appears to have enjoyed every opportunity to challenge the adduced evidence at those hearings. We do not act as an appellate court for state court child abuse and custody cases. We must dismiss the mother's constitutional claims as either barred by *Rooker-Feldman* or the two year statute of limitations. We will grant leave to allow the mother – as a trained lawyer – to attempt to plead constitutional claims not barred by the earlier litigation in state court.

## I.   Alleged facts from the Complaint and public record.

Holly Dobrosky is the mother of now seven-year-old G.B.[1]   Beginning in January 2015, Ms. Dobrosky noticed G.B.'s father, Paul Biancheri, become more physical with G.B.[2]   G.B. expressed to Ms. Dobrosky her fears of being around Mr. Biancheri.[3]   When alone with Mr. Biancheri, G.B. would cry and urinate on herself.[4]   G.B. frequently described Mr. Biancheri as a "monster."[5]

### *Ms. Dobrosky's first reported concerns.*

On January 19, 2015, Ms. Dobrosky reported her concerns to Officer Robert Compton of the Middletown Police Department.[6]   Around the same time Ms. Dobrosky spoke with Officer Compton, G.B. told her nanny Glenda Hatton of how her father Mr. Biancheri sexually abused her.[7]   On about February 6, 2015, Hope Hatton, a Bucks County police officer and Glenda Hatton's daughter, reported the abuse to Youth Services.[8]   Bucks County Children's Advocacy Center, an organization focused on providing a forum for all investigative bodies to coordinate their efforts to revolve abuse allegations, forensically interviewed G.B.[9]   G.B. did not disclose her father's alleged abuse during this forensic interview.[10]   On February 20, 2015, Youth Services dismissed the report of the father's abuse as unfounded.[11]

After Youth Services dismissed the report of abuse, Ms. Dobrosky continued to live with Mr. Biancheri.[12]   Sometime in Spring 2015, the Children's Hospital of Philadelphia performed a sexual assault examination of G.B.[13]   The results returned inconclusive.[14]   In May 2015, Mr. Biancheri assaulted Ms. Dobrosky and her father.[15]   In June 2015, Mr. Biancheri petitioned for divorce in Bucks County Court of Common Pleas Family Division.[16]   In July 2015, the Honorable Robert Baldi entered a custody order requiring Mr. Biancheri and Ms. Dobrosky share legal custody of G.B. and alternate physical custody every forty-eight hours.[17]

2

*Ms. Dobrosky's November 2015 reported concerns.*

On November 1, 2015, G.B. told her mom Mr. Biancheri sexually abused her, verbally abused her, and fed her rotten food.[18] Ms. Dobrosky, G.B., and Hope Hatton reported the sexual abuse to Detective Gregory Kneiss of the Police Department.[19] Detective Kneiss advised Ms. Dobrosky to petition the court for a protection from abuse order.[20] Ms. Dobrosky followed Detective Kneiss's advice and on November 2, 2015, Judge Baldi granted a temporary protection from abuse petition protecting G.B. from her father Mr. Biancheri.[21] Later the same day, Mr. Biancheri learned about the protection from abuse order when he arrived at Ms. Dobrosky's residence to pick up G.B.[22] Detective Kneiss spoke with Mr. Biancheri's counsel and explained Mr. Biancheri would not be interviewed until after the Children's Advocacy Center performed a forensic interview of G.B.[23] On November 9, 2015, the Children's Advocacy Center performed the forensic interview.[24] During the interview, G.B. disclosed Mr. Biancheri's abuse.[25]

On November 10, 2015, the Honorable James McMaster held a hearing regarding the temporary protection from abuse order.[26] Ms. Dobrosky's counsel requested Judge McMaster continue the hearing and temporary protection from abuse order.[27] Ms. Dobrosky's counsel argued she did not receive a transcript of G.B.'s forensic interview conducted the day before and the investigation of abuse is in its preliminary stage.[28] Detective Andrew Amoroso of the Department testified at the hearing.[29] Detective Amoroso explained the Department assigned him to investigate the allegations of abuse supporting the temporary protection from abuse.[30] He explained the investigation is on-going and no criminal charges had been filed.[31] He explained Youth Services and the Children Advocacy Center are also participating in the investigation.[32] Judge McMaster asked counsel about the couple's earlier history of petitioning for protections from abuse.[33] Judge McMaster noted both Mr. Biancheri and Ms. Dobrosky petitioned for

3

protections from abuse against each other in July 2015.[34] Mr. Biancheri's counsel explained Ms. Dobrosky and Mr. Biancheri ultimately withdrew their July 2015 petitions with prejudice and agreed to a custody arrangement.[35] Following Detective Amoroso's testimony, review of the couple's history of protection from abuse petitions, and argument from counsel, Judge McMaster continued the hearing but denied the request to continue the temporary protection from abuse order without prejudice.[36] Judge McMaster explained the parties must abide by actions taken by the Department or Youth Services should they decide to take action following the forensic interview.[37]

On November 12, 2015, Detective Amoroso interviewed Mr. Biancheri.[38] After the interview, Youth Services, the Department, and the Bucks County District Attorney's Office found no proof of criminal activity by Mr. Biancheri.[39]

After dismissal of the claims of abuse against Mr. Biancheri, Ms. Dobrosky contacted agents of unidentified child protection agencies.[40] The agents suggested Ms. Dobrosky create a video of G.B. describing the abuse she experienced from Mr. Biancheri and offer the video to law enforcement and Youth Services.[41] In December 2015, Ms. Dobrosky filmed the video and sent it to Social Worker Jennifer Lometti of Youth Services, Detective Paul Lang of the Lower Makefield Police Department, and Bucks County Assistant District Attorney Jessica Bryant.[42] Ms. Dobrosky alleges all recipients "summarily discounted" the video.[43]

On January 7, 2016, Judge Baldi held a custody contempt hearing upon Mr. Biancheri's request.[44] Ms. Lometti testified at the hearing.[45] Youth Services assigned Ms. Lometti as the caseworker for complaints received regarding allegations of abuse of G.B.[46] Ms. Lometti explained Youth Services completed all investigations at the time of the hearing.[47] With regards to Youth Services' investigations into allegations of abuse from November 2015, Mr.

4

Biancheri's counsel asked Ms. Lometti who Youth Services interviewed.[48] Ms. Lometti testified Youth Services interviewed G.B., Ms. Dobrosky, and Mr. Biancheri.[49] When asked if she contacted G.B.'s doctor, Ms. Lometti testified she did not contact Dr. Jill Stavalone, one of G.B.'s doctors.[50] Ms. Lometti testified the Police Department and the Children's Advocacy Center also participated in the investigation.[51]

Ms. Dobrosky retained partial custody. Her child continued to fear Mr. Biancheri. Ms. Dobrosky continued to look for someone to help her child but could not find help.[52]

### *Ms. Dobrosky violates the custody order by taking the child to Miami.*

In July 2016, desperate to keep G.B. away from Mr. Biancheri, Ms. Dobrosky fled to Miami, Florida with G.B.[53] Ms. Dobrosky violated the custody order by remaining in Miami with G.B. for nearly a month.[54] The Commonwealth issued a warrant for Ms. Dobrosky's arrest.[55] Around this time, Ms. Dobrosky purportedly transferred her parental rights to her friend Rebecca Morales in Miami.[56] On July 25, 2016, the Bucks County Court of Common Pleas Family Division held a hearing regarding Ms. Dobrosky's violation of the custody order.[57] Ms. Dobrosky failed to appear and the court granted Mr. Biancheri sole legal and physical custody of G.B.[58]

Ms. Dobrosky returned to Pennsylvania in late July 2016.[59] On August 2, 2016, an unidentified police department arrested Ms. Dobrosky.[60] The Bucks County District Attorney's Office charged Ms. Dobrosky with interference with custody of a child.[61] On March 20, 2017, a jury found Ms. Dobrosky guilty.[62] On June 19, 2017, the Honorable Rea B. Boylan sentenced her to time served to twenty-three months and five years of probation, the longest period of probation possible.[63] Citing Ms. Dobrosky's complete disregard of the custody order, Judge

5

Boylan also ordered Ms. Dobrosky not to contact Mr. Biancheri, members of his family, G.B., or G.B.'s caretakers until further order of custody in family court.[64]

On April 25, 2018, Ms. Dobrosky sued Youth Services, Ms. Lometti, Social Worker Suzanne Manicelli and Director Lynne Rainey of Youth Services claiming they violated her First, Fourth, and Fourteenth Amendment rights.[65]  Ms. Dobrosky claims Youth Services failed to interview the individuals who reported the abuse and failed to obtain and review G.B.'s medical records during its investigations.  Ms. Dobrosky asks us to direct Youth Services to reopen its investigation.  She also requests we appoint a guardian *ad litem* and a "qualified professional" to determine whether G.B. is safe in Mr. Biancheri's custody, and if appropriate, to remove G.B. from his custody until a determination is made.  Ms. Dobrosky also seeks monetary damages.

## II.  Analysis

Defendants move to dismiss arguing we lack subject matter jurisdiction because (1) Ms. Dobrosky lacks standing to sue; (2) federal courts are not the proper forum for custody disputes; and, (3) Ms. Dobrosky's requested relief is barred under *Rooker-Feldman* doctrine.  If we find subject matter jurisdiction, Defendants move to dismiss arguing Ms. Dobrosky fails to state a claim because (1) the claims are barred by the two year statute of limitations; (2) Defendants are immune from liability under the Eleventh Amendment; (3) Ms. Dobrosky's requests for injunctive relief are barred under the doctrine of *res judicata*; and, (4) Ms. Dobrosky failed to allege a violation of her civil rights or a negligent act by the Defendants.  Defendants move to strike allegations they characterize as immaterial and impertinent.  Ms. Dobrosky did not timely oppose Defendants' motion.

6

## A. Ms. Dobrosky may sue on her own behalf.

Defendants argue Ms. Dobrosky lacks standing to sue. They argue Ms. Dobrosky fails to allege a traceable injury related to their conduct which we can redress.

Article III of the Constitution limits the judicial power of the federal courts to deciding cases or controversies. The doctrine of standing arises from this Article III limitation.[66] To establish standing, Ms. Dobrosky must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[67] The alleged injury must be concrete and particularized to Ms. Dobrosky.[68] At the pleading stage, general fact allegations of injury resulting from the defendant's conduct may suffice, because on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."[69] Ms. Dobrosky may "rest upon the allegations" in her complaint.[70]

It is well settled the due process clause of the Fourteenth Amendment "protects certain narrowly defined fundamental rights of parents in their relationships with their children."[71] The Supreme Court has recognized the "interest of parents in the care, custody, and control of their children . . . is perhaps the oldest fundamental liberty interests."[72] Our court of appeals recognizes a parent's cognizable liberty interest in preserving the life and physical safety of her minor child which extends from the parent's "liberty interest in the custody of his children and the maintenance and integrity of the family."[73] Under this liberty interest, parents have challenged municipalities' conduct in investigating claims of abuse of their minor children and taking remedial steps in removing children from the custodial parents' home and terminating parental rights.[74] In the context of challenging a social workers conduct, a social worker's "decision or conduct constitutes a substantive due process violation only when it is 'so clearly arbitrary' that it 'can properly be said to shock the conscience.'"[75]

7

Ms. Dobrosky alleges Defendants' conduct violated her constitutional right "to the companionship, care, custody, and management" and the "right to intimate association" with her child.[76] Ms. Dobrosky alleges Defendants violated these rights by conducting an inadequate investigation into claims of abuse against Mr. Biancheri. She alleges Youth Services' inadequate investigation prevented her from protecting her child and resulted in emotional distress. Defendants argue Ms. Dobrosky fails to allege a cognizable injury traceable to their conduct because they did not have responsibility for determining G.B.'s custody.

Ms. Dobrosky alleges a concrete injury traceable to Defendants' conduct. Not only does Ms. Dobrosky allege Defendants failed to interview persons with personal knowledge of Mr. Biancheri's alleged abuse and failed to consider medical evidence before determining allegations against Mr. Biancheri unsubstantiated, she also alleges Ms. Lometti testified in the custody proceeding Youth Services concluded the allegations of abuse unsubstantiated following its investigation. Ms. Dobrosky claims had Youth Services conducted an adequate investigation into the allegations of abuse, Youth Services could have taken steps to protect G.B. from Mr. Biancheri, as opposed to characterizing the allegations as unfounded to Judge Baldi. Youth Services' alleged failure to do so resulted in maintaining the shared custody with Mr. Biancheri. Ms. Dobrosky seeks monetary relief under Section 1983, among other forms of relief, which may redress the alleged constitutional violation. Ms. Dobrosky has standing to sue.

## B. We dismiss Ms. Dobrosky's Section 1983 claim because her non-monetary requests for relief are barred by the *Rooker-Feldman* doctrine and her Section 1983 claim is otherwise barred by the statute of limitations.

Ms. Dobrosky claims Defendants violated her First, Fourth, and Fourteenth Amendment rights under Section 1983. She claims they failed to conduct an adequate investigation into reports of Mr. Biancheri's sexual abuse by failing to interview the individuals with personal

8

knowledge of the abuse and failing to obtain and review G.B.'s medical records. She claims Defendants' conduct lead to officers arresting her for violating a court order, leading to her incarceration and conviction, which caused her to lose custody of G.B. and caused mental anguish, humiliation, and a loss of natural enjoyment of life and life's pleasures. She also alleges their actions prevented her from maintaining her law practice. She does not explain away her intervening violation of a court order leading to the criminal charge, trial, conviction and sentence.

Defendants argue (1) we lack subject matter jurisdiction over this case; (2) the claim is barred by the *Rooker-Feldman* doctrine; (3) they enjoy qualified immunity; (4) the claim is barred by the statute of limitations; (5) Ms. Dobrosky fails to state a claim; and, (6) Ms. Rainey cannot be sued under the theory of *respondeat superior*.

> **1. Ms. Dobrosky's requests we direct Youth Services re-open its investigations, appoint G.B. guardian *ad litem,* and appoint a "qualified professional" to determine whether G.B. is safe in Mr. Biancheri's custody are barred by the *Rooker-Feldman* doctrine.**

Ms. Dobrosky asks us to direct Youth Services to reopen its investigation into claims of abuse of G.B., appoint a *guardian-ad-litem* for G.B., and have a "qualified professional" determine whether G.B. is safe in Mr. Biancheri's custody, and if appropriate, remove G.B. from Mr. Biancheri's custody until a determination is made. Youth Services argues these requests for relief are barred by the *Rooker–Feldman* doctrine. We agree with Youth Services.

The *Rooker-Feldman* doctrine "bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment."[77] The *Rooker–Feldman* doctrine precludes "lower federal court jurisdiction over claims that were actually litigated or 'inextricably intertwined' with adjudication by a state's courts"[78] A claim is inextricably intertwined with a state court adjudication "under two circumstances: (1) when in

9

order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered and (2) when the federal court must ... take action that would render [the state court's] judgment ineffectual."[79] The *Rooker–Feldman* doctrine generally does not bar claims by persons who were not parties to the underlying state action.[80]

In *Marran v. Marran*, a mother and child sued a municipality's youth services agency and the child's father.[81] Before suing in federal court, a state court suspended the father's visitation rights after the mother alleged the father sexually abused the child during an overnight visit.[82] The youth services agency investigated the alleged abuse and ultimately found the allegations unfounded.[83] Relying on the agency's findings, among other things, the state court reinstated the father's visitation rights.[84] The state court issued a custody order finding the mother's allegations unsubstantiated and awarded the couple joint legal custody with primary physical custody to the mother.[85] The mother appealed and the Pennsylvania Superior Court affirmed the state court order.[86] The mother appealed to the Pennsylvania Supreme Court.[87]

During the pendency of her appeal to the Pennsylvania Supreme Court, the mother sued in federal court. The mother and child claimed the agency violated their constitutional rights by failing to properly investigate allegations of sexual abuse by the father.[88] The mother sought monetary damages on her own behalf and her child's behalf, a declaration the agency's findings were null and void, and an injunction prohibiting the father from abusing the child.[89] The court dismissed the complaint in its entirety under the *Rooker-Feldman* doctrine.[90] The mother appealed. Our court of appeals divided the complaint into three categories of claims: (1) the mother's claims against the father; (2) the child's claims against the father; and (3) the mother and child's claims against the municipality.

The court found the *Rooker-Feldman* doctrine most clearly barred the mother's claims against the father seeking damages for emotional distress under state law. The court explained in order for the mother to succeed on her claims, the district court would have to find the state court erred in determining the allegations of abuse unsubstantiated.[91] The court found the claim presented in federal court inextricably intertwined with the state court custody judgment.[92]

The court described the claims against the municipality as "more involved."[93] The mother sought damages of emotional distress on her own behalf and her child's behalf and a declaration the agency's investigation was inadequate and the agency's findings were null and void.[94] The court found the declaratory relief sought barred under *Rooker–Feldman* as an indirect attack to the custody determination adjudicated in state court.[95] The court explained the state court relied on the agency's determination the abuse allegations were unfounded and based its custody order on the findings.[96] Granting the relief sought would imply a finding the state court erred.[97]

Despite seeking improper relief, our court of appeals found the *Rooker-Feldman* doctrine did not bar the substantive due process claim in its entirety.[98] The court explained finding the agency violated the mother and daughter's substantive due process rights in investigating the allegations of abuse would not require a finding the state court erred in relying on the agency's investigation report and findings.[99] The court analogized the case to *Ernst v. Child & Youth Services of Chester Cnty.*[100] In *Ernst*, the court found *Rooker-Feldman* did not bar the district court from ruling on the merits of a custodial grandmother's claim a youth services agency violated the grandmother's substantive due process rights "by making recommendations to the state court out of malice or personal bias" because a finding in favor of the grandmother "would not have required the court to find that the state court judgments made on the basis of those

11

recommendations were erroneous."[101] In *Marran*, the court acknowledged finding a due process violation could potentially affect the custody determination by giving the mother grounds to move for reconsideration of the custody order in state court.[102]

The Bucks County Court of Common Pleas entered a custody order providing Ms. Dobrosky and Mr. Biancheri alternate physical custody of G.B. every forty-eight hours. The court later awarded Mr. Biancheri sole legal and physical custody of G.B. after Ms. Dobrosky violated the court's earlier custody order by fleeing to Miami with G.B. for nearly a month. The court also entered and later discontinued a temporary protection from abuse order against Mr. Biancheri while Youth Services and other municipal entities investigated into claims of abuse. We have no basis to assume the state deprived Ms. Dobrosky – as a trained lawyer – of the ability to adduce evidence at the November 2015 and January 2016 hearings. She today challenges the quantum of evidence adduced by the state at the hearing. But the hearing is long over. We are not aware of whether Ms. Dobrosky filed an appeal or pursued further steps to revisit the evidence adduced at the hearings.

Ms. Dobrosky's requests to appoint guardian *ad litem* and appoint a professional to determine whether G.B. is safe in Mr. Biancheri's custody, and if appropriate, remove G.B. from Mr. Biancheri's custody, are improper indirect attacks on the state court orders. Granting this request would imply the state court erred in its custody determination, a finding prohibited by *Rooker-Feldman.* This is not the proper forum for Ms. Dobrosky to challenge or modify the terms of her custody of G.B.

Ms. Dobrosky's request we direct Youth Services re-open its investigations into the alleged abuse of G.B. is an indirect attack on the state court's custody determination. Ms. Dobrosky's request is similar to the declaratory relief sought by the mother in *Marran.* In

12

*Marran*, the court found the mother's request for a declaration the youth services agency's finding the allegations of abuse unfounded "null and void" an improper attack on the state court custody determination. The court in *Marran* explained the state court relied on the agency's findings in resolving the custody dispute and therefore, the court found the attack to the agency's findings an indirect attack to the state court's custody order. In the notes of testimony from Ms. Dobrosky and Mr. Biancheri's custody proceeding attached to the Complaint, the state court heard testimony from Ms. Lometti, a social worker at Youth Services regarding the allegations of abuse against Mr. Biancheri and subsequent investigations. Ms. Lometti told the court Youth Services found the allegations of abuse unfounded after its investigations. Similar to *Marran*, an order directing Youth Services re-open its investigations is equivalent to declaring Youth Service's initial investigation findings "null and void." Granting the declaratory relief sought by Ms. Dobrosky would be an improper attack on the state court custody determination.

We dismiss Ms. Dobrosky's request to direct Youth Services re-open its investigation, appoint G.B. guardian *ad litem* and appoint a "qualified professional" to determine whether G.B. is safe in Mr. Biancheri's custody because the relief sought is barred under *Rooker-Feldman*.

### 2. To the extent Ms. Dobrosky's Section 1983 claim for monetary damages survives dismissal under *Rooker-Feldman*, her claim is barred by the statute of limitations.

Although several of Ms. Dobrosky's requests for relief are barred by *Rooker-Feldman*, her Section 1983 claim for monetary damages based on the alleged violation of her substantive due process rights is not barred by *Rooker-Feldman*. As explained by our court of appeals in *Marran*, a finding Youth Services violated Ms. Dobrosky's substantive due process rights by conducting an inadequate investigation would not require we find the state court erred in relying on the agency's findings or finding the state court's judgments to be erroneous.

13

But the substantive due process claim appears, on the face of the sworn Complaint, to be barred by the two year statute of limitations. Defendants argue the claim arises out of alleged conduct during Youth Services' 2015 investigations into reports of abuse of G.B. They argue Ms. Dobrosky knew or should have known the existence of these claims based on the 2015 Youth Services' investigation at the conclusion of the investigations in 2015. They argue Ms. Dobrosky's April 25, 2018 Complaint is untimely because Youth Services' investigations into abuse ended on November 12, 2015 and Ms. Dobrosky's claims are subject to a two year statute of limitations period.

Defendants may move to dismiss based on the statute of limitations defense "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."[103] Because Congress has not provided a statute of limitations for claims brought under Section 1983, federal courts apply the statute of limitations governing personal injury claims in the forum state.[104] The statute of limitations period for personal injury actions in Pennsylvania is two years.[105] Federal law governs a cause of action's accrual date.[106] "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'"[107]

Ms. Dobrosky alleges Youth Services participated in two investigations in 2015 regarding reports of abuse against Mr. Biancheri. The first investigation began on February 6, 2015 after G.B. disclosed abuse to her nanny. On February 20, 2015, Youth Services dismissed the report of abuse as unfounded. The second investigation began on November 1, 2015 after G.B. disclosed abuse to Ms. Dobrosky and G.B.'s nanny. The second investigation concluded on

November 12, 2015 when Youth Services, the District Attorney, and the Department found no proof of criminal activity.

Ms. Dobrosky focuses her complaint on the November 2015 investigation. She claims Youth Services failed to interview Hope Hatton, Glenda Hatton, Dr. Arathi Rao, Carol Dobrosky, and Jacquelyn Jastremski, each who had personal knowledge regarding the alleged abuse. She also claims Youth Services failed to consider G.B.'s medical records from Lower Bucks Pediatrics and Children's Hospital of Philadelphia before finding no proof of criminal activity.

Even assuming Ms. Dobrosky could plead a claim under Section 1983 based on these failures, Ms. Dobrosky's claim is time barred under the two year statute of limitations period. In support of her claim, Ms. Dobrosky cites Ms. Lometti's testimony from the January 7, 2016 hearing in the divorce and custody proceedings in family court.[108] In the hearing, Ms. Lometti admits Youth Services interviewed only G.B., Ms. Dobrosky, and Mr. Biancheri during their November 2015 investigation. Ms. Lometti did not interview Hope Hatton, Glenda Hatton, Dr. Arathi Rao, Carol Dobrosky, and Jacquelyn Jastremski, witnesses Ms. Dobrosky alleges had personal knowledge regarding the claims of abuse. Ms. Lometti also admits Youth Services did not contact at least one of G.B.'s doctors.

Youth Services ended its investigation in November 2015. Defendants argue Ms. Dobrosky's claim accrued at the end of the investigation in November 2015. Reviewing Ms. Dobrosky's complaint in light most favorable to her and drawing all inferences in her favor, by January 7, 2016 at the latest, Ms. Dobrosky knew or should have known Youth Services did not interview Hope Hatton, Glenda Hatton, Dr. Arathi Rao, Carol Dobrosky, and Jacquelyn Jastremski and did not contact at least one of G.B.'s doctors as part of its investigation. Ms.

15

Lometti testified to these facts in January 7, 2016 in Ms. Dobrosky's custody and divorce matter in family court. Ms. Dobrosky claims these failures amounted to a violation of her Fourteenth Amendment due process rights.

Ms. Dobrosky, a trained attorney representing herself in family court, knew or should have known on January 7, 2016, who Youth Services interviewed and what medical evidence it reviewed as part of the November 2015 investigation. Ms. Dobrosky sued in federal court on April 25, 2018, three-and-a-half months after the statute of limitations period expired on January 7, 2018. Ms. Dobrosky's noncompliance with the limitations period is apparent on the face of the Complaint. We dismiss Ms. Dobrosky's Section 1983 claim to the extent it survives dismissal under the *Rooker-Feldman* doctrine.

### C. We decline supplemental jurisdiction over Ms. Dobrosky's state law negligence claim.

Ms. Dobrosky's remaining claim of negligence arises under Pennsylvania law. Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[109] A district court "may decline to exercise supplemental jurisdiction over a claim" when "all claims over which it has original jurisdiction" are dismissed.[110] When a district court dismisses a claim it has original jurisdiction before trial, the court "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."[111]

We dismiss Ms. Dobrosky's claim under Section 1983. Absent federal questions and an affirmative justification to decide the pendent state law claim, we decline supplemental jurisdiction over Ms. Dobrosky's state law negligence claim.

## III.    Conclusion

In the accompanying Order, we dismiss Ms. Dobrosky's claims for civil rights violations
and negligence. Ms. Dobrosky's request we direct Youth Services re-open its investigation into
alleged abuse of G.B., appoint G.B. guardian *ad litem*, and appoint a qualified professional to
determine whether G.B. is safe in Mr. Biancheri's custody are barred by *Rooker-Feldman.* To
the extent Ms. Dobrosky's claim for monetary relief under Section 1983 survives dismissal under
*Rooker-Feldman*, the claim is barred by the statute of limitations. Absent federal questions, we
decline supplemental jurisdiction over Ms. Dobrosky's state law negligence claim.    We will
allow Ms. Dobrosky, proceeding *pro se*, an opportunity to timely amend if she can plead facts
overcoming these legal principles consistent with Fed.R.Civ.P. 11.

---

[1] ECF Doc. No. 4, ¶ 1.

[2] *Id.* ¶ 19.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* ¶ 20.

[8] *Id.*

[9] *Id.* ¶ 25.

[10] *Id.* ¶ 25.

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 27.

17

[13] *Id.* ¶ 35.

[14] *Id.*

[15] *Id.* ¶ 28-31.

[16] *See* Docket, *Biancheri v. Dobrosky*, No. 2015-60920C (Bucks C.C.P. June 18, 2015).  Ms. Dobrosky and Defendants attach transcripts and orders from Ms. Dobrosky's and Mr. Biancheri's divorce and custody proceedings in Bucks County Court of Common Pleas.  In evaluating a motion to dismiss, we may consider matters of public record.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[17] *Id.* ¶ 32; ECF Doc. No. 9-2 at p. 2.

[18] ECF Doc. No. 4, ¶¶ 33-34.

[19] *Id.* ¶ 35.

[20] *Id.*

[21] *Id.* ¶¶ 36, 46.

[22] *Id.* ¶ 38.

[23] *Id.* ¶ 39.

[24] *Id.* ¶ 40.

[25] *Id.*

[26] *Id.* at pp. 76-85.

[27] *Id.* at p. 78.

[28] *Id.*

[29] *Id.* at p. 82

[30] *Id.*

[31] *Id.*

[32] *Id.* at 83.

[33] *Id.* at p. 80.

[34] *Id.*

[35] *Id.*

[36] *Id.* at p. 84.

[37] *Id.*

[38] *Id.* ¶ 49.

[39] *Id.* ¶ 49.

[40] *Id.* ¶ 64.

[41] *Id.*

[42] *Id.* ¶ 65

[43] *Id.*

[44] *See* Docket, *Biancheri v. Dobrosky*, No. 2015-60920C (Bucks C.C.P. June 18, 2015).

[45] ECF Doc. No. 9-2, at pp. 92-98.

[46] *Id.* at p. 94.

[47] *Id.* at 96.

[48] *Id.* at 97.

[49] *Id.*

[50] *Id.*

[51] *Id.* at pp. 97-98.

[52] ECF Doc. No. 4, ¶¶ 67-68.

[53] *Id.* ¶ 68.

[54] *Id.* ¶¶ 68-72.

[55] *Id.* ¶ 69.

[56] *Id.* ¶ 71.

[57] ECF Doc. No 9-2 at p. 2.

[58] *Id.*

[59] ECF Doc. No. 4, ¶¶ 68-72.

[60] *Id.* ¶ 75.

[61] *See* Docket, *Commonwealth v. Dobrosky*, CP-09-CR-5878-2016 (Bucks C.C.P. Sept. 9, 2016). Ms. Dobrosky references her criminal trial in her Complaint and Defendants attach a transcript of sentencing in Ms. Dobrosky's criminal proceeding. We may consider this matter of public record in evaluating the Defendants' motion to dismiss. *Buck*, 452 F.3d at 260.

[62] *See* Docket, *Commonwealth v. Dobrosky*, CP-09-CR-5878-2016 (Bucks C.C.P. Sept. 9, 2016).

[63] ECF Doc. No. 9-3 at pp. 2-6.

[64] *Id.*

[65] ECF Doc. No. 1.

[66] *See Allen v. Wright*, 468 U.S. 737, 750-751 (1984).

[67] *Id.*

[68] *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

[69] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (*quoting Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[70] *Lujan*, 497 U.S. at 902.

[71] *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003).

[72] *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).

[73] *Id.* (quoting *Estate of Bailey by Oare v. York County*, 768 F.2d 503, 509 n.7 (3d Cir. 1985)).

[74] *See e.g.*, *Marran v. Marran*, 376 F.3d 143 (3d Cir. 2004); *Croft v. Westmoreland Cnty. CYS*, 103 F.3d 1123 (3d Cir. 1997); *Crawford v. Washington Cnty. Children and Youth Servs.*, 353 F. App'x 726 (3d Cir. 2009).

[75] *Crawford*, 353 F. App'x at 730 (citing *Miller v. City of Phila.*, 174 F.3d 368, 376 (3d Cir. 1999)).

[76] ECF Doc. No. 4, ¶83.

[77] *Marran*, 376 F.3d at 149 (citation omitted).

[78] *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000).

[79] *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 421 (3d Cir. 2003) (*citing FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotations omitted)).

[80] *Marran*, 376 F.3d at 151 (citing *Valenti v. Mitchell,* 962 F.2d 288, 297–98 (3d Cir.1992).

[81] *Id.* at 148.

[82] *Id.* at 147.

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.* at 147-48.

[87] *Id.* at 148.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.* at 151.

[93] *Id.* at 152.

[94] *Id.*

[95] *Id.* at 153-154.

[96] *Id.* at 153.

[97] *Id.*

[98] *Id.* at 154.

[99] *Id.*

[100] 108 F.3d 486 (3d Cir. 1996).

[101] *Marran*, 376 F.3d at 154 (quoting *Ernst*, 108 F.3d at 491-92).

[102] *Id.*

[103] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (citation omitted).

[104] *Wallace v. Kato*, 549 U.S. 384, 397 (2007).

[105] 42 Pa.C.S. § 5524.

[106] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)).

[107] *Id.* (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

[108] ECF Doc. No. 4, ¶¶ 56-58.

[109] 28 U.S.C.A. § 1367(a).

[110] 28 U.S.C.A. § 1367(c)(3).

[111] *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995)).